UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:06CV-00016-JHM

JAMES RAAKE COLLIER                                          PETITIONER

VS.

LARRY D. CHANDLER, Warden                                    RESPONDENT

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION

BACKGROUND

Petitioner, by counsel, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (DN 1). The petition identifies twelve grounds for relief (DN 1). Additionally, with leave of court (DN 9) petitioner has filed an amendment setting forth a thirteenth ground for relief (DN 6, 9). The district court referred this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) (DN 9).

Respondent has filed an answer as well as a motion to dismiss or, in the alternative, a motion for summary judgment (DN 14, 15). Petitioner has filed a reply (DN 20) to respondent's answer (DN 14) as well as a response (DN 21) to respondent's dispositive motion (DN 15). The undersigned concludes that an evidentiary hearing is not necessary to address the claims asserted by petitioner. The issues raised by petitioner are fully developed and this matter is ripe for determination.

## FINDINGS OF FACT

On November 10, 1986, a Warren County, Kentucky, Grand Jury issued a 5-count indictment against petitioner, James Raake Collier ("Collier") (DN 14, Appendix Volume 1 at Pages 1-2). Count 1 charged that on or about October 24, 1986, in Warren County, Kentucky, Collier intentionally murdered David LaMastus by shooting him with a shotgun (DN 14, Appendix Volume I at Page 1). Count 2 charged that Collier intentionally murdered Pam LaMastus by shooting her with a shotgun (DN 14, Appendix Volume I at 1). Count 3 charged that Collier committed robbery in the first degree when in the course of committing a theft from David LaMastus, Collier used or threatened the use of physical force with the intent to accomplish the theft and Collier was armed with a shotgun (DN 14, Appendix Volume I at Page 1). Count 4 alleged that Collier committed the crime of robbery in the first degree when in the course of committing a theft from Pam LaMastus, he used or threatened the use of physical force upon her with the intent to accomplish the theft and Collier was armed with a shotgun (DN 14, Appendix Volume I at Page 1). Finally, Count 5 charged that on the same date Collier committed the crime of possession of a Schedule II Narcotic Controlled Substance when he possessed a quantity of cocaine (DN 14, Appendix Volume I at Page 1).

The Commonwealth sought the death penalty in this case. As a result, a general voir dire and individual voir dire of potential jurors was conducted. Following a jury trial before the Warren Circuit Court, Collier was found guilty of all five charges (DN 14, Appendix Volume II at Page 82). Collier was sentenced to life without the possibility of parole for twenty-five years for each of the two murder counts, twenty years on each robbery count and five years on the possession count (DN 14, Appendix Volume II at Page 82). The trial court ordered the two murder sentences to run concurrently (DN 14, Appendix Volume II at 82). The trial court ordered the two robbery

2

counts and the possession count to run consecutively for a total of forty-five years but concurrently with the murder sentences (DN 14, Appendix Volume II at Page 82).

Evidence presented at the trial showed that on October 24, 1986, the Kentucky State Police found a vehicle containing the bodies of Pam and David LaMastus on McFarland Lane in Warren County, Kentucky.  Collier v. Commonwealth, 2003 WL 22463963, *1 (Ky.App. 2003) (unpublished opinion).  The police found no identification on the bodies or in the vehicle.  Id.  The police believed the two victims had died as a result of shotgun wounds to the head and that the shots had come from the passenger side of the car.  Id.  The police investigation revealed that the victims, Pam and David LaMastus, had been seen on the night of their murders with April Bull, Billy Smith, Stanley Bluet and Collier at John Embry's home.  Id.  After interviewing Embry and Bull, Detective Stan Harlow took Collier in for questioning.  Id.

Although Collier initially denied knowing Pam and David LaMastus, he later admitted purchasing $150.00 worth of crack cocaine from David LaMastus and smoking the crack with Bull, Embry and the victims.  Id.  After the crack cocaine was gone, Collier requested that David LaMastus give him more cocaine on credit.  Id.  Apparently LaMastus refused Collier's request because the cocaine was not his.  Id.  Collier indicated to the police that the LaMastuses then followed him and Smith out to McFarland Lane to sell them more cocaine.  Id.

According to Collier, Smith told David LaMastus to give the cocaine to Collier and, after Pam LaMastus handed the cocaine to Collier, Smith fired two shots into their car, grabbed Pam's purse and drove off with Collier.  Id.  According to Collier as they were driving toward the bridge at the bottom of Barren River Road, Smith threw the shotgun out of the car window.  Id.  According to Collier, while he intended to participate in robbing David and Pam LaMastus, he had

3

no idea that Smith intended to shoot them.  Id.

Police searched the area where Collier claimed Smith disposed of the shotgun but they found nothing.  Id.   The police subsequently interviewed Smith about the murders and he denied being present at the scene.  Id.   Although Smith had been at Embry's house several times on the day the murders occurred, Smith indicated to the police that when the murders occurred he, Brenda Matthews and Larry Gann were selling items, stolen during a burglary of a home, in order to buy more cocaine.  Id.   Both Matthews and Gann corroborated Smith's story.  Id.

Collier's defense at trial was he and Smith were at the scene and Smith was the shooter.  Id.   Collier's statement to the police was played to the jury.  Id.   Smith denied being present at the scene.  Id.   Three defense witnesses testified that Smith told them he was present at the scene but was not the shooter.  Id.   The prosecution called Smith, Matthews, and Gann as witnesses in order to refute Collier's defense.  Essentially these witnesses testified at the time the murders occurred Smith was fencing items they took during a home burglary earlier that day. Matthews testified she was sure the burglary and the murders occurred on the same Friday because she recalled taking her son to school before they burglarized the house.  Id.  Notably, there was no physical evidence linking any suspect to the crime.  Id.   Oddly, the Commonwealth introduced into evidence a shotgun police recovered from  Collier's home that the Commonwealth's own ballistics expert indicated was inoperable.  Id. at *1, *4.   In sum, the jury convicted Collier based on circumstantial evidence.

Collier appealed, as a matter of right, to the Supreme Court of Kentucky (DN 14, Appendix Volume II at 83).  On direct appeal Collier raised five issues (DN 14, Appendix Volume II at Pages 5-49).  First, he argued he was denied his State and federal constitutional right to

4

confrontation when the trial court sustained the Commonwealth's objection and admonished the jury to disregard Smith's testimony that he was on probation or parole at the time he committed the burglary (DN 14, Appendix Volume II at 19).  The Supreme Court of Kentucky concluded the trial court erred but found the error was harmless because Smith's potential bias - - the possibility of a "deal" with the Commonwealth in exchange for favorable testimony - - was adequately exposed by other questions during cross-examination (DN 14, Appendix II at Pages 84-85).

The next three assignments of error on a direct appeal concerned adverse rulings the trial court made regarding certain questions defense counsel asked during individual voir dire (DN 14, Appendix Volume II at 25, 33, 39).  Collier argued that individual voir dire was unduly restricted, effectively violating his constitutional rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Sections Eleven and Seventeen of the Kentucky Constitution, when the trial court sustained the Commonwealth's objections to the following: (1) defense counsel asking a juror "how he feels about parole," (2) defense counsel asking a juror whether there might be instances in which he could not impose the minimum sentence, and (3) defense counsel asking whether a juror could consider mercy (DN 14, Appendix Volume II at 25-44, 85).  The Supreme Court of Kentucky concluded the trial court did not abuse its broad discretion in the area of questioning during voir dire because the jurors were asked whether they could consider the full range of penalties and the trial judge instructed the jurors to consider any mitigating facts and circumstances presented in the evidence that they believed to be true (DN 14, Appendix Volume II at Pages 85-86).

Finally, on direct appeal Collier argued that his federal constitutional guarantee against double jeopardy as well as his right to be free from multiple punishment was violated when

the trial court permitted him to be convicted of murder as well as first degree robbery (DN 14, Appendix Volume II at 44).  Citing the test in <u>Blockburger v. United States</u>, 284 U.S. 299 (1932) Collier argued murder became an element of the offense of robbery because the instructions permitted the jury to use the shooting of the victims to satisfy the physical injury element of first degree robbery (DN 14, Appendix Volume II at 44-49, 86).  The Supreme Court of Kentucky concluded the argument was "fatally flawed because it 'ignores the obvious statutory fact that murder is not an included incident to the commission of ... robbery" (DN 14, Appendix Volume II at 86) (quoting <u>Kinser v. Commonwealth</u>, 741 S.W.2d 648, 654 (Ky. 1988)).  Further, the Supreme Court of Kentucky noted that each crime requires proof of an element that the other crime does not (DN 14, Appendix Volume II at Page 86).  The Supreme Court of Kentucky affirmed the judgment of conviction.

Collier, by counsel, filed a motion, pursuant to Ky. R.Crim.P. 11.42, to vacate, set aside or correct the judgment of conviction (DN 14, Appendix Volume III at Page 88).  In support of the motion Collier's counsel filed a supporting memorandum (DN 14, Appendix Volume III at Pages 95-142).  The trial court conducted an evidentiary hearing on March 15, 1996, July 5, 1996, October 23, 1998 and March 25, 2003 (DN 14, Appendix Volume III at 144; DN 14, Appendix Volume IV at 326-585).

The trial court issued findings of fact, conclusions of law and an order overruling Collier's Rule 11.42 motion for relief from the judgment of conviction (DN 14, Appendix Volume III at Pages 207-215).  The trial court addressed the following claims: (1) "The Commonwealth withheld exculpatory evidence that the only other suspect, Billy Smith, was at the murder scene"; (2) "The Commonwealth withheld evidence which the defense could have used to impeach the

6

credibility of April Bull, a witness for the prosecution"; (3) "The Commonwealth withheld FBI/state police surveillance tapes in which April Bull stated that she believed Smith was lying about his alibi"; (4) "Witnesses Billy Smith, Larry Gann and Brenda Matthews falsely testified that they had not received deals with the Commonwealth on their burglary charges in exchange for testimony against Collier and the Commonwealth failed to disclose such deals in discovery"; (5) "Trial counsel failed to object to the introduction of Collier's shotgun into evidence"; (6) "Trial counsel failed to check school records in order to impeach Brenda Matthews' testimony that she had picked up her son from school the day of the burglary that she allegedly committed with Smith and Gann"; (7) "Appellate counsel failed to object to the introduction of photographs of the victims' bodies" (DN 14, Appendix Volume III at 208-215). Essentially the trial court found no merit to these arguments and denied the Rule 11.42 motion.

In his appeal to the Kentucky Court of Appeals Collier essentially raised four separate claims involving alleged prosecutorial misconduct (DN 14, Appendix Volume III at Pages 218-224). He alleged that the Commonwealth improperly suggested that defense witnesses Wilma McPherson and Debra Tinsley, who placed Billy Smith at the scene of the murders, had recently fabricated their testimony (DN 14, Appendix Volume III at Page 222). The next two allegations of prosecutorial misconduct involved the Commonwealth's witness, April Bull. First, Collier claimed that the prosecution knew, or should have known, that Bull was purchasing and using cocaine while testifying for the Commonwealth in his murder trial (DN 14, Appendix Volume III at 221). Collier also claimed that the Commonwealth improperly failed to reveal a tape recorded statement in which Bull indicated she did not believe the witnesses who provided Smith with an alibi (DN 14, Appendix Volume III at 222). Collier also claimed the Commonwealth acted improperly by concealing deals

that it made with Smith, Gann and Matthews in exchange for their favorable testimony against Collier (DN 14, Appendix Volume III at 220-221).

In his appellate brief to the Kentucky Court of Appeals Collier raised three claims of ineffective assistance of counsel.  First, Collier claimed his counsel on appeal was ineffective for failing to argue the photographs depicting the bodies of the victims should have been excluded from evidence at trial (DN 14, Appendix Volume III at Page 224).  Next, Collier asserted his trial counsel was ineffective for failing to investigate and obtain information to impeach Matthews' testimony corroborating Smith's alibi (DN 14, Appendix Volume III at Page 223).  Finally, Collier alleged that trial counsel failed to object to the admission of his shotgun which the Commonwealth's own ballistics' expert found to be inoperable (DN 14, Appendix Volume III at 221).

The Kentucky Court of Appeals found no merit to Collier's claims and affirmed the judgment of the Warren Circuit Court denying Collier's Rule 11.42 motion.  Collier, 2003 WL 22463963, *1-*4 (October 31, 2003).  The Supreme Court of Kentucky denied discretionary review on September 16, 2004.

CONCLUSIONS OF LAW

Since Collier filed his petition for writ of habeas corpus on September 16, 2006 (DN 1) review of the State court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Lindh v. Murphy, 521 U.S. 320, 336 (1997).  As to each claim made by Collier, the Court must determine first whether a constitutional right has been violated.  Williams v. Taylor, 529 U.S. 362, 367 (2000). If the answer is in the affirmative and the State court adjudicated the claim on its merits, this Court

must then employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition. Williams, 529 U.S. at 367, 402-403, 412-413. As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."

Under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if "the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] ... on a question of law or if the state court decides a case differently than ...[the Supreme Court] ... has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-413. Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the petition if "the state court identifies the correct governing principle from ... [the Supreme Court's] ... decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. To meet this standard the State court's application of clearly established federal law must be more than incorrect, it must be objectively unreasonable. Id. at 409-411. To meet the "unreasonable determination of facts" standard in § 2254(d)(2) the undersigned opines the State court's determination of facts must be more than incorrect, it must be objectively unreasonable. In sum, § 2254(d), as amended by Chapter 153 of AEDPA, places constraints on the power of the Court to grant a petition as to constitutional claims adjudicated on the merits in the State courts. Williams, 529 U.S. at 412.

A

In Ground 1, Collier argues that he was denied his right to due process, under the Sixth and Fourteenth Amendments to the United States Constitution, when the "Commonwealth and its agents (state and federal law enforcement officials)" failed to notify him that a key prosecution witness, April Bull, was buying and using narcotics during the same time period she testified against Collier (DN 1).   Collier alleges Commonwealth and federal law enforcement agents, while conducting surveillance in an unrelated drug investigation, taped April Bull obtaining cocaine yet the Commonwealth failed to advise Collier about this "exculpatory" evidence which could have been used to impeach her testimony (DN 1).

Respondent points out that the Kentucky Court of Appeals concluded there was no direct evidence that April Bull did in fact purchase or use cocaine during the two days that she testified at Collier's trial (DN 14, Memorandum at Pages 6-8).   Respondent asserts that since Collier has done nothing to rebut the presumption that the State court findings are correct, habeas corpus relief is not warranted (DN 14, Memorandum at 8).

In his reply, Collier argues the State court's adjudication of this claim has resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented during the evidentiary hearings before the trial court (DN 20 at 1-6).   Collier contends that the failure to disclose Brady evidence[1] regarding Bull is material because there is a reasonable probability of a different result had this evidence been properly disclosed to defense counsel during the trial (DN 20 at Page 5).   United States v. Bagley, 473 U.S. 667, 682, 687 (1985); Kyles v. Whitley, 514 U.S. 419, 433, 434 (1995).

---

[1] Brady v. Maryland, 373 U.S. 83, 87 (1963).

10

Under Brady v. Maryland, the prosecution is required to turn over to the defendant evidence in its possession that is both favorable to the defendant and material to guilt or punishment. 373 U.S. 83, 87 (1963);   Strickler v. Greene, 527 U.S. 263, 280 (1999).  "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987).  "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  Id.   Notably, this duty to disclose extends to information in the possession of the investigating law enforcement agency.  Kyles v. Whitley, 514 U.S. 419, 437-438 (1995).

Collier has the burden of demonstrating the following: (1) The evidence is favorable to him, either because it is exculpatory or impeaching; (2) the evidence was suppressed (whether intentionally or not) by the Government; and (3) prejudice to the defense occurred.  Strickler, 527 U.S. at 281-282.  To satisfy the "prejudice" requirement, Collier must show "a reasonable probability that the jury would have returned a different verdict."  Id. at 296.  If the Court concludes despite the suppressed material the jury would still have convicted Collier based on the evidence presented at trial, then the conviction must stand.  Id.  A Brady claim may also arise when the prosecution (1) introduces testimony that it knows or should know is perjury; (2) fails to honor a defense request for specific exculpatory evidence; or (3) fails to volunteer exculpatory evidence not requested by the defendant or requested only generally by the defendant.  Kyles, 514 U.S. at 433. Notably, a Brady violation does not occur when a defendant knew or should have known of the essential facts permitting him to take advantage of the information, or where the evidence was available to the defendant from another source.  Spirko v. Mitchell, 368 F.3d 603, 611 (6th Cir. 2004).

11

The trial court conducted an evidentiary hearing on March 15, 1996, July 5, 1996, October 23, 1998 and March 25, 2003 (DN 14, Appendix Volume IV Pages 326-571) related to Collier's Rule 11.42 motion.  On March 15, 1996, retired FBI Special Agent John Aldee, Kentucky State Police ("KSP") Detective Bill Jenkins, retired KSP Detective Richard Barton, and retired KSP Detective Wendell Jackson testified about a joint FBI/KSP investigation into drug trafficking at Hilltopper Billiards in Bowling Green, Kentucky (DN 14, Appendix Volume IV Pages 332-347, 348-355, 356-360, 399-403).  The investigation began in August of 1987 and ended in October of that year.  Id.  Their testimony indicates although April Bull frequented Hilltopper Billiards during the time frame she testified against Collier and they suspected she might be buying drugs there was no audio and/or visual surveillance confirming their suspicions.  Id.  Their testimony also indicates no one in the Office of the Commonwealth's Attorney was aware of this joint task force investigation until it was completed.  Id.  Further, Bull's drug use was made known to the jury during the trial.  Clearly, Collier has not demonstrated the Government suppressed evidence that could have been used to impeach Bull and that the defense has been prejudiced.  In sum, Collier has failed to satisfy his burden under Brady.

Since Collier has failed to demonstrate a violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the Kentucky Court of Appeals treated this as a prosecutorial misconduct claim.  Collier v. Commonwealth, 2003 WL 22463963, *2 (Ky.App. 2003).  The State appellate court noted although the joint federal/ state drug task force observed Bull repeatedly entering the billiard hall none of the tape recordings revealed her purchasing drugs.  Since Bull admitted during the trial that she was a cocaine user but denied she was using drugs at the time of trial, the Kentucky

12

Court of Appeals concluded that the jury possessed enough information about Bull's drug use to evaluate her credibility.  Id.  In sum, the Kentucky Court of Appeals concluded Collier had not been prejudiced.  Id.

In adjudicating this claim the Kentucky Court of Appeals did not cite Brady or the three-part test used to determine whether a Brady violation has occurred.  Collier, 2003 WL 22463963, *2.  Nonetheless, the undersigned concludes adjudication of this claim by the Kentucky Court of Appeals has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of" the rule set forth in Brady.  Williams, 529 U.S. at 412-413 (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceeding.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on the claim set forth in Ground 1.

In Slack v. McDaniel, the Supreme Court established a single prong test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on the merits.  529 U.S. 473, 484 (2000).  Since the undersigned recommends rejecting Ground 1 on the merits, Collier must demonstrate that reasonable jurists would find it debatable whether he has stated a valid claim of the denial of a Constitutional right.  Id.  For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground 1 states a valid claim of the denial of a Constitutional right.  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to Ground 1.

B

13

In Ground 2, Collier asserts three more <u>Brady</u> claims (DN 1; DN 20 at Pages 6-11). He alleges (1) The Commonwealth failed to provide him with exculpatory evidence indicating Smith admitted to defense witnesses Wilma McPherson and Debra Tinsley that he had been present during the murders; (2) despite knowing differently, the Commonwealth impeached defense witnesses Wilma McPherson and Debra Tinsley by implying through cross-examination that trial is the first time these two witnesses came forward with their information about Smith's admission; and (3) the Commonwealth failed to furnish Collier with April Bull's tape recorded statements indicating she disbelieved Smith's alibi for the murders (DN 1).

As to the first and second allegations, respondent contends Collier has not rebutted the presumption of correctness accorded the Kentucky Court of Appeals' finding that no evidence exists to prove the Commonwealth was in possession of such information before trial or the Commonwealth improperly cross-examined McPherson or Tinsley (DN 14).  As to the third allegation, respondent points out the Kentucky Court of Appeals ruled since Bull's opinion would not have been admissible at trial this omission by the Commonwealth cannot be considered an error (DN 14 at Page 12).

In his reply, Collier argues the Kentucky Court of Appeals' adjudication of the first and second assertions is an unreasonable determination of the facts in light of the evidence presented during the post-conviction evidentiary hearing.  As to all three assertions he argues the adjudication is contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law regarding exculpatory evidence, set forth in <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985) (DN 20 at Pages 6-11).

The undersigned will address the first and second assertions together and the third

assertion separately.  McPherson and Tinsley  were last minute witnesses for the defense.  They both testified that within a couple of  days of the murders they encountered Smith at a Bowling Green bar.  They also testified that during this encounter Smith privately confided to them that he was present when David and Pam LaMastus were murdered but he did not pull the trigger.  The Commonwealth impeached both witnesses by pointing out on cross-examination that neither one of them contacted the police about what Smith told them.

During the Rule 11.42 evidentiary hearing Collier presented McPherson.  She again testified that a couple of days after the murders she and Tinsley encountered Smith at a Bowling Green bar (DN 14, Appendix Volume IV Pages 373-384).  McPherson testified that Smith told them in confidence that he was present when the murders occurred but did not pull the trigger.  (DN 14, Appendix Volume IV Pages 373-384).  She also testified that Smith claimed to be in fear for his life because he witnessed the murders (DN 14, Appendix Volume IV Pages 373-384).  McPherson testified she and Tinsley in turn relayed this information to Tim Coleman (DN 14, Appendix Volume IV Page 373-384).  Notably, McPherson testified she did not call the Kentucky State Police or the Commonwealth's Attorney because she did not believe Smith (DN 14, Appendix Volume IV at Pages 373-384).

During the evidentiary hearing, Timothy Wayne Coleman testified that KSP Detective Harlow interviewed him within a couple of days of the murders because he was a first cousin to one of the victims (DN 14, Appendix Volume IV at Pages 384-396).  According to Coleman, after that interview McPherson and Tinsley informed him of what Smith had confided to them (DN 14, Appendix Volume IV Pages 384-396).  Coleman testified later that same evening he called KSP Detective Harlow and provided the information he received from McPherson and

15

Tinsley (DN 14, Appendix Volume IV Pages 384-396).  Coleman recalls being told by Detective Harlow that they had just picked up Smith for questioning (DN 14, Appendix Volume IV Pages 384-396).

During the evidentiary hearing KSP Detective Stan Harlow confirmed that he interviewed Coleman two days after the murder (DN 14, Appendix Volume IV Pages 405-410). Detective Harlow testified he did not subsequently receive a telephone call from Coleman (DN 14, Appendix Volume IV Pages 405-410).

In sum, the undisputed evidence shows prior to trial McPherson and Tinsley did not contact the Commonwealth's Attorney or the KSP with their information about Smith.  Instead, they waited until the trial was nearly completed before they contacted defense counsel.  In fact, defense counsel had to obtain leave of Court to reopen in order to present the testimony of McPherson and Tinsley. Clearly, Collier cannot demonstrate this evidence was suppressed by the Government. Strickler v. Greene, 527 U.S. 263, 281-282 (1999).  Nor can Collier demonstrate prejudice to the defense.  Id.   Thus, Collier has failed to demonstrate a Brady violation as to the first assertion.

As to Collier's second assertion, his reliance on Coleman's testimony about a telephone call to KSP Detective Harlow is misguided.  The issue is whether prior to trial McPherson and/or Tinsley made any effort to inform the Commonwealth's Attorney or the police of their knowledge about Smith's alleged involvement in the crime.  Since they did not, it was appropriate for the Commonwealth to impeach McPherson and Tinsley on that basis.  Furthermore, in light of the evidence corroborating Smith's alibi and McPherson's reason for not contacting the authorities, Collier cannot show prejudice to the defense occurred.  Strickler, 527 U.S. at 281-282.  Clearly, as to the second assertion, Collier has not demonstrated a Brady violation.

16

As to Collier's third assertion, a September 20, 1987 conversation involving Bull was recorded by an FBI bug during the joint FBI/KSP investigation into drug trafficking at Hilltopper Billiards.  In the recorded conversation Bull expresses her opinion that Smith's alibi is a lie because she believes he burglarized the house on Thursday night (not Friday afternoon) and he sold the stolen merchandise Friday morning (not Friday night when the murders occurred) (DN 20 at Page 10 Footnote 15, Excerpt of September 20, 1987 FBI Transcript).  The Kentucky Court of Appeals noted that under Kentucky law Bull's opinion as to Smith's truthfulness would not have been admissible at trial. Collier v. Commonwealth, 2003 WL 22463963, *2 (Ky.App. 2003) (citing Moss v. Commonwealth, 949 S.W.2d 579 (1997)).  To the extent Collier challenges the Kentucky Court of Appeals' pronouncement on Kentucky law the undersigned points out that it is not the province of a "federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  The undersigned will therefore limit review to Collier's claim that a Brady violation occurred.

During the evidentiary hearing, retired FBI Special Agent Aldee explained the joint FBI/KSP investigation involved the FBI conducting audio surveillance via a bug placed in the building and the KSP conducting visual surveillance from a nearby apartment (DN 19, Appendix Volume IV Pages 332-347).  The FBI subsequently transcribed the audio tapes and provided copies of the transcripts to the KSP (DN 14, Appendix Volume IV Pages 332-347).  There is no evidence in the record indicating when the KSP and the Commonwealth's Attorney actually received a copy of the transcript setting forth Bull's conversation of September 20, 1987.  If the transcript copy was received before completion of Collier's trial then there may be a factual basis for a Brady claim.  If, on the other hand, a copy of the transcript was provided weeks after Collier's trial was completed

17

then there would appear to be no factual basis for a <u>Brady</u> claim.  Due to this critical gap in the evidence the undersigned concludes that Collier has not sustained his burden of demonstrating that the Commonwealth suppressed the evidence.  <u>Strickler</u>, 527 U.S. at 281-282.

Nonetheless, Bull's unsubstantiated personal opinions expressed during the September 20, 1987 conversation are rebutted by the compelling evidence that the Commonwealth presented to corroborate Smith's alibi.  For this reason, Collier cannot show a "reasonable probability that the jury would have returned a different verdict" if the transcript of Bull's comments had been presented.  <u>Strickler</u>, 527 U.S. at 281-282.

Since Collier has failed to demonstrate that any one of his three assertions amount to a violation of <u>Brady</u>, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the Kentucky Court of Appeals concluded as to all three assertions that Collier had failed to demonstrate prejudice to the defense occurred.  <u>Collier</u>, 2003 WL 22463963, *2.  Although the Kentucky Court of Appeals did not identify the rule set forth in <u>Brady</u> the undersigned concludes adjudication of these three assertions by the State appellate court has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of" the rule set forth in <u>Brady</u>.  <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on the claims set forth in Ground 2.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated valid claims of the denial of a Constitutional right.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not

18

recommend issuance of a Certificate of Appealability for these <u>Brady</u> claims set forth in Ground 2.

C

In Ground 3, Collier asserts two more <u>Brady</u> claims (DN 1; DN 20 at Pages 11-14). He accuses the Commonwealth of (1) failing to disclose an agreement with Smith for leniency on the burglary charge in return for his testimony; and (2) allowing to go uncorrected perjured testimony by Matthews and Gann indicating they did not receive any special consideration from the Commonwealth for their testimony (DN 1).  According to Collier, post-conviction evidence shows all three prosecution witnesses received favorable consideration in their pending criminal cases because of their testimony against Collier (DN 1).  Collier asserts that (1) the Commonwealth recommended probation for Matthews; (2)  Smith (a persistent felony offender) was told by then Commonwealth Attorney Morris Lowe that he would receive pre-trial diversion in exchange for his truthful testimony against Collier; and (3) Larry Gann's sentencing was delayed until after he testified at Collier's trial (DN 1).

Respondent contends  Collier has not rebutted the presumption that the State courts correctly determined the Commonwealth made no deals with Smith, Gann or Matthews in exchange for their testimony in the Collier trial (DN 14 at Pages 13-19).

In his reply, Collier asserts adjudication of this claim by the Kentucky courts has resulted in a decision that is based on an unreasonable determination of the evidence presented during the post-conviction evidentiary hearings (DN 20 at Pages 11-14).  He argues testimony during the evidentiary hearings provides clear and convincing evidence of Commonwealth "deals" with Smith, Gann and Matthews in exchange for favorable testimony against Collier (DN 20 at

19

Pages 11-14).  Collier reasons if jurors had known about these deals they may have doubted the credibility of Smith, Gann and Matthews regarding Smith's alibi (DN 20 at Page 14).  Additionally, Collier argues that adjudication of this claim in the State court has resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established United States Supreme Court rules of law (DN 20 at Pages 11-14).

During the evidentiary hearing, Gann confirmed he did not receive any promises from the Commonwealth regarding his burglary charge in exchange for his testimony in the Collier case (DN 14, Appendix Volume IV Pages 412-414).  During the evidentiary hearing, Smith testified there was no agreement with the Commonwealth Attorney's Office or the Kentucky State Police regarding the disposition of his burglary charge in exchange for his testimony against Collier (DN 14, Appendix Volume IV Pages 415-422).  The attorney who prosecuted the Commonwealth's case, Joe Kirwan, indicated he was not aware of any deals with Smith, Matthews or Gann (DN 14, Appendix Volume IV at Pages 423-451).

During the March 15, 1996 evidentiary hearing, retired Commonwealth's Attorney Morris Lowe testified that he had no agreement or deal with Gann and Matthews in exchange for their testimony against Collier (DN 14, Appendix Volume IV Pages 456-469).  However, Mr. Lowe believed that he offered pretrial diversion on the burglary charge if Smith testified as to the truth (DN 14, Appendix Volume IV Pages 456-469).  Notably, on July 5, 1996, Mr. Lowe testified that after having his recollections refreshed by talking with the people who were involved, including defense counsel for Smith, he concluded that he made a mistake in his earlier testimony (DN 14, Appendix Volume IV Pages 511-517).  Mr. Lowe testified the agreement came after Smith testified against Collier (DN 14, Appendix Volume IV Pages 511-517).  Finally, on March 25, 2003, Mr.

Lowe testified there was an understanding but not an absolute deal with Smith (DN 14, Appendix Volume IV Pages 572-585).

While the lenient treatment that Smith, Matthews and Gann received on their burglary charges raises the possibility of deals with the Commonwealth in exchange for testimony against Collier, there is no clear evidence that the Commonwealth actually made deals with them prior to their testifying against Collier. In sum, Collier has not demonstrated that the Government actually suppressed evidence regarding deals with Smith, Gann and Matthews. Strickler, 527 U.S. at 281-282. Equally as important, Collier has not demonstrated prejudice to the defense occurred. Id. During Collier's trial defense counsel through cross-examination was able to suggest to jurors that there may be some type of deal with the Commonwealth as to the burglary charges in exchange for their favorable testimony against Collier. Further, other prosecution evidence corroborated the testimony of Smith, Gann and Matthews about the burglary and sale of stolen items. In sum, Collier cannot show there is a reasonable probability that the jury would have returned a different verdict if they had been shown evidence of a deal with the Commonwealth on their burglary charges in exchange for testimony in the Collier case. Id.

Since Collier has failed to demonstrate a violation of his Brady right, it is not necessary to perform a § 2254(d) review. Notwithstanding, the Kentucky Court of Appeals deferred to the trial court's finding that there was no direct evidence to sustain Collier's contention that the Commonwealth made deals with these witnesses. Collier, 2003 WL 22463963, *3. Further, the Kentucky Court of Appeals noted that defense counsel was permitted to question Smith, Gann, and Matthews about the existence and status of their burglary charges, raising the possibility of their bias in the minds of the jury. Id. Although the Kentucky Court of Appeals did not identify the

21

three-part test used to determine whether a <u>Brady</u> violation has occurred, it is apparent that the appellate court found Collier failed to demonstrate evidence was suppressed by the Government and that prejudice occurred to the defense. <u>Id.</u>  Clearly, adjudication of this claim by the Kentucky Court of Appeals has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in <u>Brady</u>. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on the claims set forth in Ground 3.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for these two <u>Brady</u> claims set forth in Ground 3.

D

In Ground 4, Collier argues he was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution by trial counsel's failure to object to the introduction of his antique shotgun into evidence or moved to strike it from the evidence on grounds of relevancy (DN 1).  He contends evidence showed it had not been fired; the type of wadding found at the crime scene was different than the type used with this shotgun; and the Commonwealth's own ballistics expert testified that without extreme measures his shotgun would not fire (DN 1).

22

Respondent points out the Kentucky Court of Appeals applied the test in <u>Strickland v. Washington</u>, 446 U.S. 668 (1984), and concluded it was an acceptable trial strategy to permit introduction of the shotgun and then discredit the prosecution's case by proving it could not have been the murder weapon (DN 14 at Pages 19-21).  Respondent argues adjudication by the State courts has not resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law (DN 14 at Pages 19-21).

In his reply, Collier asserts he was prejudiced because the shotgun was on display throughout the trial and brandished by the prosecutor during closing argument (DN 20 at Pages 15-17).  Again, Collier argues defense counsel should have objected to its admission or moved to strike it from the evidence after the Commonwealth failed to show the weapon was relevant to the charges (DN 20 at Page 17).

In <u>Strickland v. Washington</u>, the Supreme Court established a two-prong test that is used to determine whether a defendant has been deprived of a fair trial as a result of errors by counsel.  466 U.S. 668, 687 (1984).  To satisfy the first prong of the test, a defendant must demonstrate that counsel's "representation fell below an objective standard of reasonableness."  <u>Id.</u> at 687, 688.  In assessing counsel's performance, the Court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Id.</u> at 689-690.  Due to the difficulties inherent in making such an evaluation, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689.  For this reason, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  <u>Id.</u> (citation omitted).

23

To satisfy the second prong of the test, a defendant must show that there is a "reasonable probability" that, but for counsel's unprofessional error, the result of the proceeding would have been different.  Id. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  Id.

The Court need not conduct the two-prong inquiry in the order identified or even address both parts if a defendant makes an insufficient showing on one part.  Id. at 697.  For example, if the Court determines the defendant failed to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient.  Id.

During the evidentiary hearing, Bill Klapheke testified that he and the other defense counsel, Walter Baker, decided as a matter of trial strategy not to object to the admission of the shotgun (DN 14, Appendix Volume IV Pages 481-510).  They were familiar enough with both the prosecution and defense expert evidence to know this could not have been the weapon used to kill the LaMastuses (DN 14, Appendix Volume IV Pages 481-510).  Defense counsel planned to cut the prosecution off at the knees by demonstrating to the jury this was the wrong weapon (DN 14, Appendix Volume IV Pages 481-510).

Clearly, Collier has succumbed to the temptation of second-guessing counsels' assistance after the conviction.  Strickland, 466 U.S. at 689.  The unrebutted testimony shows defense counsel made a sound tactical decision to allow this shotgun into evidence in order to undermine the prosecution's case.  For this reason Collier has not satisfied his burden as to the performance component under Strickland.  Additionally, the undisputed evidence at trial showed that each victim died as a result of a shotgun blast at close range.  The presence or absence of the shotgun in evidence does not change this fact.  For this reason Collier cannot show there is

24

"reasonable probability" that, but for counsels' alleged omission, the result of the proceeding would have been different.  Id. at 694.  In sum, Collier has failed to show counsels' performance was deficient and the alleged deficient performance prejudiced his defense.  Id. at 687.

Since Collier has failed to demonstrate a violation of his Sixth Amendment right to counsel, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the rule set forth in Strickland "qualifies as 'clearly established federal law as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 391 (2000) (quoting § 2254(d)(1)).  The Kentucky Court of Appeals concluded Collier did not satisfy the first prong of the Strickland test because it was acceptable trial strategy to permit introduction of Collier's shotgun and then discredit the Commonwealth's case by proving that it could not have been the murder weapon.  Collier v. Commonwealth, 2003 WL 22463963, *4 (Ky.App. 2003).  Clearly, adjudication of this claim by the Kentucky Court of Appeals has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in Strickland.  Williams, 529 U.S. at 412-413 (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceeding.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for this claim of ineffective assistance of counsel in Ground 4.

E

In Ground 5 Collier argues he was denied effective assistance of counsel, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, by trial counsel's failure to impeach Matthews' recollection about her child attending school on the Friday that the murders occurred (DN 1).   Collier contends defense counsel should have challenged and impeached Matthews' testimony with evidence showing the Warren County schools were not in session that Friday (DN 1).

Respondent argues adjudication of this claim by the State courts has not resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established United States Supreme Court precedent articulated in <u>Strickland</u> (DN 14 at Pages 21-24).   Respondent points out the Kentucky Court of Appeals found the <u>Strickland</u> prejudice prong could not be satisfied because testimony from other prosecution witnesses substantiated the important part of Matthews' testimony, the whereabouts of Smith, Gann and herself when the murders occurred (DN 14 at Pages 21-24).

In his reply, Collier argues to satisfy the <u>Strickland</u> prejudice prong he need only show that "confidence in the outcome of this trial is undermined" (DN 20 at Page 17).   Collier reasons how can it not be undermined when he "was convicted on the testimony of witnesses, whose own credibility was suspect and all of whom received deals in return for their testimony" against him (DN 20 at Page 17).   Collier points out Matthews testified that she remembered the day in question because she recalled getting her child off to school before she went out and committed the burglary with Smith and Gann (DN 20 at Page 17).   He points out that on October 24, 1986, the Warren County schools were not in session (DN 20 at Page 17-18).   Collier reasons if defense

counsel had investigated Matthews' claim and then used this information to impeach her during cross-examination it would have weakened, if not destroyed, Smith's alibi defense and would have cast doubt upon Matthews' ability to recollect key events (DN 20 at Page 18).  Collier believes defense counsels' omissions undermined his defense that Smith shot David and Pam LaMastus (DN 20 at Page 18).

Clearly Collier has succumbed to the temptation of second-guessing counsels' assistance after conviction.  Strickland, 466 at 689.  Certainly, defense counsel could have used evidence showing the Warren County Schools were not in session to impeach Matthews' testimony about her child attending school that Friday.  However, this is a point of minor significance.  The real import of Matthews' testimony is that she corroborated Smith's alibi (Gann,  Matthews and Smith burglarized the home of Danny Sublett on Friday afternoon and when the murders were occurring Smith was somewhere else selling the stolen property).  Notably, Matthews' testimony is only part of the evidence that corroborated Smith's alibi.  For example, the police recovered the stolen property from the buyers who Smith identified to police.  The buyers of the stolen property corroborated Smith's alibi when they testified at Collier's trial.   In sum, if defense counsel impeached Matthews' testimony about her child attending school that Friday it would not have undermined Smith's alibi.  For the above reasons, Collier has failed to show there is a "reasonable probability" that, but for counsels' alleged omission during cross-examination of Matthews, the result of the proceeding would have been different.  Strickland, 466 U.S. at 694.

Since Collier has failed to demonstrate a violation of his Sixth Amendment right to counsel, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the Kentucky Court of Appeals concluded that Collier did not satisfy the second prong of the Strickland test.  Collier,

2003 WL 22463963, *3.  In reaching this conclusion it relied on the other evidence in the record that substantiated Matthews' alibi.  Collier, 2003 WL 22463963, *3.  Clearly, adjudication of this claim by the Kentucky Court of Appeals has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in Strickland.  Williams v. Taylor, 529 U.S. 362, 412-413 (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for this claim of ineffective assistance of counsel in Ground 5.

F

In Ground 6, Collier argues he was denied effective assistance of appellate counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, by the failure of his appellate counsel to raise and brief the issue of prejudice created by the admission of gruesome photographs that were merely cumulative evidence designed to inflame the jury (DN 1).

Respondent argues State court adjudication of this claim has not resulted in a decision that is contrary to, or involves an unreasonable application of, the clearly established United States Supreme Court law (DN 14 at 24-26).  Respondent points out the Kentucky Court of Appeals held that Collier failed to sustain his burden as to both prongs under Strickland because photographs

depicting murder victims do not become inadmissible simply because they are gruesome (DN 14 at Pages 24-26).

In his reply, Collier characterizes the photographs as gruesome cumulative evidence designed solely to inflame the jury (DN 20 at Page 19).  He points out that trial counsel objected to admission of these bloody photographs because there were other less gruesome photographs that showed the position of the bodies and would not be as inflammatory to the jury (DN 20 at Page 19). Collier reasons the failure to raise this preserved issue on direct appeal is sufficient to satisfy the Strickland performance prong (DN 20 at Page 19).  He also reasons the Strickland prejudice prong is satisfied because the potential of these gruesome photos to inflame and prejudice the jury was great and the photos did not go unnoticed by the jurors (DN 20 at Page 19).

Discarding weaker arguments on appeal and focusing on those more likely to prevail is a hallmark of effective appellate advocacy.  Smith v. Murray, 477 U.S. 527, 536 (1986).  The admission of the photographs is a matter of State evidentiary law that did not deprive Collier of a fundamentally fair trial due to the overwhelming circumstantial evidence presented by the Commonwealth.  Estelle v. McGuire, 502 U.S. 62, 67-70 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  The failure of appellate counsel to raise what is clearly a meritless State law evidentiary claim, Gall v. Commonwealth, 607 S.W.2d 97, 106-107 (Ky. 1980), cert. denied 450 U.S. 989 (1981) (overruled on other grounds Thompson v. Commonwealth, 862 S.W.2d 871, 876 (Ky. 1993)), does not fall outside the wide range of professional competent assistance.  Strickland, 466 U.S. at 690.  Further, Collier cannot satisfy the prejudice component of Strickland because under Kentucky law the photographs were admissible.

Since Collier has failed to demonstrate a violation of his Sixth Amendment right to counsel, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the Kentucky Court of Appeals essentially found Collier had not satisfied the prejudice prong of the <u>Strickland</u> test. <u>Collier</u>, 2003 WL 22463963, *3.  Clearly, adjudication of this claim by the Kentucky Court of Appeals has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in <u>Strickland</u>.  <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Kentucky Court of Appeals made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ set forth in Ground 6 of his petition.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for this claim of ineffective assistance of counsel in Ground 6.

### G

In Ground 7, Collier argues his constitutional right to confrontation and due process, under the Sixth and Fourteenth Amendments to the United States Constitution, were violated when the trial court sustained the Commonwealth's objection and admonished the jury to disregard Smith's testimony that he was on probation or parole at the time he committed the alleged burglary (DN 1).

Respondent believes this claim is merely a rehashing of Collier's claim in Ground

4 that he was not permitted to elicit evidence of a deal with the Commonwealth in return for Smith's testimony against Collier (DN 14 at Page 26).  Respondent points out the Kentucky courts held there was no evidence of any such deal and Collier has not rebutted this finding by clear and convincing evidence (DN 14 at Pages 26-27).

Collier contends this claim is separate and distinct from his claim that the Commonwealth failed to provide information about any deal it had with Smith in exchange for his testimony (DN 20 at Page 20).  He argues the reason defense counsel questioned Smith about being on probation or parole at the time of the burglary was to elicit testimony about a deal with the Commonwealth in exchange for his testimony against Collier (DN 20 at Pages 20-21).

Collier argues the credibility of Smith's alibi was crucial because Collier accused Smith of committing the murders (DN 20 at Page 20).  For this reason, Collier contends he was entitled to present this evidence showing Smith's bias for the prosecution (DN 20 at Page 21).  Collier argues since this excluded evidence is not cumulative of any evidence brought out by either the prosecution or the defense, his right to confront Smith through cross-examination has been violated (DN 20 at Page 21).  See Davis v. Alaska, 415 U.S. 308 (1974).

It is well settled that alleged errors in the application of State law, especially in regard to the admissibility of evidence, are not cognizable in federal habeas corpus proceedings unless the error deprives the defendant of a fundamentally fair trial.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Collier attempts to demonstrate he has been deprived of a fundamentally fair trial by comparing his situation with that of the defendant in Davis v. Alaska, 415 U.S. 308 (1974).  Clearly, Collier's circumstances are distinguishable from the circumstances in Davis.

In Davis, the defendant was charged with burglarizing a bar.  The prosecution's

eyewitness was Green, who lived on the rural dirt road where the police recovered a safe stolen from the bar and who testified that he saw Davis on the day of the crime engaged in suspicious activity near the site where the safe was found.  Defense counsel was barred from eliciting on cross-examination that Green was on probation after having been adjudicated a juvenile delinquent for burglarizing two cabins.  Id. at 309-314.  Defense counsel was seeking to suggest to jurors that Green may have slanted his testimony in favor of the prosecution either to shift suspicion away from himself or to avoid the revocation of his probation for failing to cooperate.  Id. at 310, 311.  The Supreme Court held the defendant's right under the Confrontation Clause to cross-examine the prosecution witness about his probationary status as a juvenile delinquent outweighed the State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency.  Id. at 309, 315-320.

By contrast, here on direct examination Smith testified that he is a convicted  felon, that he along with Matthews and Gann committed a burglary, and that he was fencing the stolen items when the murders occurred.  Certainly, the trial court erred when it sustained the Commonwealth's objection and admonished the jury to disregard defense counsel's question and Smith's response about his being on probation or parole at the time he committed the burglary. Notwithstanding, direct examination plus defense counsel's cross-examination brought out sufficient evidence regarding Smith's bias to allow the jury to assess the credibility of his alibi and the possibility of a "deal" with the prosecution in exchange for his testimony.  In sum, the trial court's error has not denied fundamental fairness in the trial process because, unlike the circumstances in Davis, there was more than enough evidence in the record for the jury to assess Smith's credibility and bias.  Even if the trial court's ruling was Constitutional error, the undersigned concludes this

confrontation clause error is harmless beyond a reasonable doubt because the circumstantial evidence of Collier's guilt is overwhelming.  Delaware v. Van Arsdall, 475 U.S. 673, 680-684 (1986).

Since Collier has failed to demonstrate a violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, it is not necessary to perform a § 2254(d) review.  Notwithstanding, on direct appeal the Supreme Court of Kentucky found Collier's circumstances distinguishable from those in Davis v. Alaska, 415 U.S. 308 (1974), because there was ample evidence before the jury to suggest the possibility of a "deal" between the Commonwealth and Smith (DN 14, Appendix II Pages 84-85).  The Supreme Court of Kentucky also applied the rule set forth in Delaware v. Van Arsdall, 475 U.S. 673 (1986) and concluded the trial court's error was harmless beyond a reasonable doubt (DN 14, Appendix Volume II at Page 85).  Clearly, the Kentucky Supreme Court's adjudication of this claim has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rules set forth in Davis and Van Arsdall.  Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Supreme Court of Kentucky made an unreasonable determination of the facts in light of the evidence presented during the State court proceeding.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for the claim asserted in Ground 8 of the petition.

H

In Ground 8, Collier argues that his right to due process and a fair and impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, were violated when the trial court unduly restricted voir dire by sustaining the Commonwealth's objection to defense counsel's questions to prospective jurors about their understanding of the available parole options (DN 1).

Respondent contends a trial judge's refusal to let defense counsel question jurors concerning their knowledge about State parole laws does not rise to the level of a constitutional violation (DN 14 at Pages 27-29).

In his reply, Collier points out that after general voir dire of prospective jurors they moved to individual voir dire because the Commonwealth was seeking the death penalty (DN 20 at Page 22).  According to Collier, defense counsel asked the first prospective juror, David Fant, how he felt about parole and what his understanding about parole was if a defendant receives a life sentence (DN 20 at Page 20, 22).  According to Collier, Mr. Fant indicated if a defendant receives a life sentence he should not be eligible for parole (DN 20 at Page 22).  Collier asserts this response prompted defense counsel to ask Mr. Fant the following question, "[h]ow do you feel about giving a person the death penalty because you're afraid what the parole board might do?" (DN 20 at Page 22; Trial Transcript 9/10/87 at 10:01:55).  When the Commonwealth objected, the trial court sustained the objection.  Collier believes the voir dire question  was necessary to dispel the common misconception that a life sentence might result in an incarceration for only nine or ten years (DN 20 at Page 23).  He reasons such voir dire questions help to reveal prospective jurors whose erroneous

34

assumptions about parole law might bias them in favor of imposing the death penalty and allow him to use peremptory challenges against such prospective jurors (DN 20 at Page 23).

Collier's claim regarding the death penalty voir dire is probably moot because the jury chose not to impose the death penalty. Notwithstanding, Collier has not cited a single case that holds a capital murder defendant has a Constitutional right to question venire members regarding their views on parole law. Nor has the undersigned found such a case. In fact, the case law does not support Collier's argument.[2] The Supreme Court has held if a capital murder defendant's future dangerousness is at issue and State law prohibits the defendant's release on parole if sentenced to life imprisonment then due process requires a sentencing jury to be informed the defendant is not eligible for parole. <u>Simmons v. South Carolina</u>, 512 U.S. 154, 156 (1994). However, that rule does not apply here because Collier was eligible for parole if sentenced to life imprisonment. In sum, Collier has not made a substantial showing of the denial of a Constitutional right.

Since Collier has failed to demonstrate the violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, it is not necessary to perform a § 2254(d) review. Notwithstanding, on direct appeal the Supreme Court of Kentucky decided the issue based on State law (DN 14, Appendix Volume II Pages 85-86). Since the jurors were asked during voir dire whether they could consider the full range of penalties and the trial judge instructed the jurors to consider any mitigating facts and circumstances presented in the evidence that they believed to be true, the Supreme Court of Kentucky concluded there was no showing of abuse of discretion by the trial court (DN 14, Appendix Volume II Pages 85-86). The Kentucky Supreme Court's

---

[2]<u>See</u> <u>e.g.</u>, <u>King v. Lynaugh</u>, 850 F.2d 1055, 1056 (5th Cir. 1988) (no Constitutional entitlement to question prospective jurors about their understanding of State parole law).

35

adjudication of this claim has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," clearly established federal law, as determined by the Supreme Court of the United States. Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)). Nor has the Supreme Court of Kentucky made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings. 28 U.S.C. § 2254(d)(2). In sum, Collier is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for the claim in Ground 8.

## I

In Ground 9, Collier argues his right to due process and a fair and impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated when the trial court sustained the Commonwealth's objection to defense counsel's voir dire questions that asked if prospective jurors could consider the full range of punishment (DN 1).

Respondent disputes Collier's representation of the facts (DN 14 at 29). According to respondent, during voir dire defense counsel attempted to ask prospective jurors if they could not consider voting for a specific punishment (DN 14 at Page 29). According to respondent, the trial court determined such a question was not permissible because it asked the jurors to give a hypothetical (DN 14 at Pages 29-30). Respondent asserts the trial court told defense counsel it was appropriate to ask jurors if they could consider all four punishment options (DN 14 at Page 30).

In his reply, Collier insists he was precluded from questioning jurors about whether they could consider the full range of penalties (DN 20 at Page 23).  For example, defense counsel asked prospective juror David Towell whether there were situations in which he could not consider voting for a punishment of twenty years (DN 20 at Page 23).  Collier points out that during the ensuing bench conference, defense counsel explained he wanted to ask if there were situations where the juror could not vote for twenty years (DN 20 at Pages 23-24).  Collier asserts the trial court indicated such a question was not permissible because it asked the juror to give a hypothetical (DN 20 at Page 24).  According to Collier, the trial court indicated it would not ask the juror to speculate and instructed defense counsel to ask the juror if he could consider all four sentencing options (DN 20 at Page 24).

According to Collier, as questioning of prospective juror Towell progressed defense counsel asked if Towell found Collier guilty of murder during the course of a robbery would Towell start out feeling the death penalty is more appropriate than any other punishment (DN 20 at Page 24).  Collier points out when the Commonwealth objected the trial court again indicated it did not see how counsel can ask the juror to speculate without any proof or evidence and prohibited the question (DN 20 at Page 24).  Collier reasons when the trial court sustained the Commonwealth's objection to these voir dire questions it prohibited defense counsel from probing into the feelings of prospective jurors concerning the important issue of punishment and in what types of cases prospective jurors would be inclined to impose the death penalty or a sentence less than death (DN 20 at Page 24).

Since Collier's claim concerns an alleged error in the death penalty voir dire it is probably moot because the jury chose not to impose the death penalty.  Notwithstanding, Collier has

37

not cited a single Supreme Court case that holds a capital murder defendant has a federal Constitutional right to question venire members regarding their views on possible ranges of punishment given hypothetical situations.  Nor has the undersigned found such a case.  The Supreme Court has held that inquiry is permitted to determine whether any potential juror would in all instances refuse to impose the death penalty upon conviction of the offense.  <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968).   Additionally the Supreme Court has held that potential jurors may be questioned to determine if they would automatically vote to impose the death penalty for conviction of a capital offense despite the trial court's instruction to consider mitigating facts.  <u>Morgan v. Illinois</u>, 504 U.S. 719, 735-739 (1992).  However, neither holding applies to the type of inquiry defense counsel was attempting to conduct during the individual voir dire.  The right to examine jurors on the possible range of punishment "has its source in that state's law of criminal procedure, not the federal constitution."  <u>Moreno v. Estelle</u>, 717 F.2d 171, 179 (5th Cir. 1983).  It is not the province of a "federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).

Since Collier has failed to demonstrate a violation of his Sixth and Fourteenth Amendment rights under the United States Constitution, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the Kentucky Supreme Court's adjudication of this claim has not resulted in a decision that is either "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States..."  <u>Williams v. Taylor</u>, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Supreme Court of Kentucky made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on this

claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for this claim in Ground 9 of the petition.

J

In Ground 10, Collier argues that his rights to due process and a fair and impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, were violated when the trial court unduly restricted voir dire by prohibiting defense counsel from asking prospective jurors whether they could consider mercy (DN 1). Respondent takes the position that it was not necessary for defense counsel to be allowed to voir dire prospective jurors concerning mercy because of the instructions given by the trial court and the presumption that a jury will follow the trial court's instructions (DN 14 at Pages 30-32). Respondent points out that the instructions the trial court gave in this death penalty case protected Collier's constitutional right to a fair sentencing procedure (DN 14 at Page 32).

In his reply Collier argues the trial court's ruling prohibited defense counsel from probing into the feelings of prospective juror Towell concerning the important issue of punishment (DN 20 at Page 25). Collier asserts that the trial court's ruling denied defense counsel the opportunity to discover whether prospective jurors could show compassion for a defendant based on his background and character (DN 20 at Page 25).

Again, since the jury did not impose the death sentence Collier's claim is probably

moot.  Notwithstanding, Collier has not cited a single case that holds he has a Constitutional right to voir dire the jury on mercy.  Nor has the undersigned found one.  Again, this is a matter of State law.  Thus, Collier's claim is not cognizable in federal habeas corpus proceedings.

Since Collier has failed to demonstrate a violation of his Sixth and Fourteenth Amendments under the United States Constitution, it is not necessary to perform a § 2254(d) review. Notwithstanding, the Kentucky Supreme Court concluded there was no showing of abuse of discretion because the jurors were asked whether they could consider the full range of penalties and the trial judge instructed the jurors to consider any mitigating facts and circumstances presented in the evidence that they believed to be true (DN 14, Appendix Volume II Page 86).  The undersigned concludes the Kentucky Supreme Court's adjudication of this claim has not resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States..."  Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Supreme Court of Kentucky made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum, Collier is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for the claim in Ground 10 of Collier's petition.

K

In Ground 11, Collier argues that his double jeopardy right, as guaranteed by the Fifth Amendment of the United States Constitution, was violated when the trial court permitted him to be convicted of murder and first degree robbery (DN 1).

Respondent points out that on direct appeal the Supreme Court of Kentucky held Collier's conviction for murder and first degree robbery did not violate the bar against double jeopardy (DN 14 at Pages 32-35).  Respondent contends the State court adjudication of this claim has not resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established United States Supreme Court law in <u>Blockburger v. United States</u>, 284 U.S. 299 (1932) (DN 14 at Pages 32-35).

In his reply Collier argues the Kentucky Supreme Court's adjudication of this issue is both contrary to and an unreasonable application of clearly established federal law in <u>Blockburger</u> (DN 20 at Pages 26-28).  He argues to sustain the robbery conviction in this case it was necessary to prove all the elements of the offense of murder (DN 20 at Page 28).  He points out that the jury was instructed it could find him guilty of first degree robbery if in doing so and with the intent to accomplish the theft he caused physical injury to David and Pam by shooting them with his shotgun (DN 20 at Page 26).  Collier reasons since proof of the murder was a necessary element of the proof of the robbery, he is being punished twice for the same offense in violation of constitutional law (DN 20 at Page 28).

The Double Jeopardy clause of the Fifth Amendment commands that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  The Fifth Amendment guarantee against double jeopardy applies to the states through the Fourteenth Amendment.  <u>Benton v. Maryland</u>, 395 U.S. 784, 794 (1969).  The Double Jeopardy clause provides three basic

41

protections:  (1) It protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense.  Jones v. Thomas, 491 U.S. 376, 379-381 (1989).

In determining whether simultaneous prosecutions under separate statutes offend the Double Jeopardy Clause, the Court must inquire as to whether each charge requires proof of an additional fact that the other does not.  Blockburger v. United States, 284 U.S. 299, 304 (1932).[3] If each offense contains an element not contained in the other, then they are not the "same offense" and double jeopardy does not bar successive prosecution or additional punishment.  United States v. Dixon, 509 U.S. 688, 696, 697 (1993).

Here, the multiple convictions pass the test enunciated by the Supreme Court in Blockburger.  All of the elements necessary to prove first degree robbery under Ky.Red.Stat.Ann. §515.020(1)[4] were present when Collier threatened the immediate use of physical force upon the

---

[3]The Supreme Court enunciated the following test for determining whether two offenses are the same for double jeopardy purposes:

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not ... A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

Blockburger v. United States, 284 U.S. 299, 303-305 (1932).

[4]The relevant portion of KRS § 515.010 reads as follows:

> "(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>
>> (a) Causes physical injury to any person who is not a participant in the crime; or

42

LaMastuses during the course of the theft while armed with a deadly weapon.  Notably, under the statute it was not necessary to prove that the LaMastuses were murdered in order to establish the elements of first degree robbery nor was it necessary to prove they were shot.  Thus, had Collier left the scene without ever firing the shotgun, he could still have been convicted of first-degree robbery.  However, after all of the statutory elements for first degree robbery were present, Collier, with the intent to cause the death of the LaMastuses, shot and killed each of them, an additional fact that had to be proven for a conviction on the intentional murder charge under KRS 507.020(1)(a).[5]

Clearly, first degree robbery and intentional murder are two separate offenses, each requiring proof of a fact that the other does not.  For this reason Collier's conviction on each of these offenses does not offend the Double Jeopardy Clause.

Collier concedes application of the <u>Blockburger</u> test to the statutes results in a finding that each offense contains an element not contained in the other (DN 20 at Page 27).  He argues if the <u>Blockburger</u> test is applied to the jury instructions for the robbery and murder charges then the Court will find a Double Jeopardy violation.  Collier points out that the Sixth Circuit in <u>Pryor v. Rose</u>, 724 F.2d 525, 526-531 (6th Cir. 1984) applied the <u>Blockburger</u> test to the State court jury instructions to determine whether a Double Jeopardy violation occurred (DN 20 at Pages 27-28).

---

     (b) Is armed with a deadly weapon; or
     (c) Uses or threatens the immediate use of a
     dangerous instrument upon any person who is not a
     participant in the crime."

[5]In relevant part KRS 507.020 reads as follows:
   "(1) A person is guilty of murder when:
     (a) With intent to cause the death of another person,
     he causes the death of such person or a third
     person..."

The Supreme Court has clearly indicated that the <u>Blockburger</u> test is to focus "on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." <u>Illinois v. Vitale</u>, 447 U.S. 410, 416 (1980).  However, in <u>Pryor</u> the Sixth Circuit did apply the <u>Blockburger</u> test to the felony-murder and robbery instructions given to a jury in a Tennessee criminal trial.  724 F.2d at 526-531.  For this reason, the undersigned will apply the <u>Blockburger</u> test to the jury instructions the trial court gave on the robbery and murder charges.

The first degree robbery instruction given in regard to David LaMastus reads:

"(a) That in this county on or about the 24th day of October, 1986, and before the finding of the indictment herein, James R. Collier stole a quantity of money, cocaine and other property from David LaMastus;

(b) That in the course of so doing and with the intent to accomplish the theft, he caused physical injury to David LaMastus by shooting him with a shotgun; and

(c) That said shotgun was a 'deadly weapon' as defined in these instructions."

(DN 24, State Court Jury Instructions at Page 332).  The first degree robbery instruction given in regard to Pam LaMastus is essentially the same (DN 24, State Court Jury Instructions at Page 338).

The intentional murder instruction given in regard to David LaMastus reads:

"(a) That in this county on or about the 24th day of October, 1986, and before the finding of the indictment herein, James R. Collier killed David LaMastus by shooting him with a shotgun;

(b) That in so doing he caused David LaMastus' death intentionally; AND

(c) That when he did so he was not acting under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse under the circumstances as he believed them to be."

(DN 24, State Court Jury Instructions at Page 312).  The intentional murder charge given in regard

44

to Pam LaMastus is essentially the same (DN 24, State Court Jury Instructions at Page 322).

Both instructions do require the jury find that Collier shot the victim.  However, the first degree robbery instructions and the intentional murder instructions required the jury to find a different intent or state of mind at the time Collier fired the shotgun.  The first degree robbery instructions required the jury to find Collier "with the intent to accomplish the theft" caused "physical injury" to Pam and David LaMastus by shooting them (DN 24 at Pages 332 and 338).  By contrast the intentional murder instructions required the jury to find Collier shot Pam and David LaMastus with the intent to cause each victim's death (DN 24, State Jury Instructions at Pages 312 and 322).  In sum, Collier's conviction on the intentional murder and first degree robbery offenses does not offend the Double Jeopardy Clause.

Since Collier has failed to demonstrate a violation of the guarantee against double jeopardy under the Fifth Amendment to the United States Constitution, it is not necessary to perform a § 2254(d) review.  Notwithstanding, the rule set forth in Blockburger qualifies as clearly established federal law as determined by the Supreme Court of the United States.  The Supreme Court of Kentucky applied the Blockburger test and concluded Collier's argument was flawed because each crime required proof of an element that the other crime did not (DN 14, Appendix II at 86).  Clearly, the Kentucky Supreme Court's adjudication of this claim has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," the rule set forth in Blockburger.  Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)).  Nor has the Supreme Court of Kentucky made an unreasonable determination of the facts in light of the evidence presented during the State court proceedings.  28 U.S.C. § 2254(d)(2).  In sum Collier is not entitled to a writ on this claim.

45

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for this double jeopardy claim in Ground 11.

L

In Ground 12, Collier argues that the alleged errors were not harmless, and in the alternative, their cumulative effect denied him a fair trial in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution (DN 1).  Respondent contends that habeas corpus relief is not available based on the "cumulative" effect of errors that themselves do not support habeas relief (DN 14 at page 36).  In his reply Collier argues that cumulative error is cognizable in federal habeas proceedings if the cumulative effect of the errors adversely affects the fundamental fairness of his trial (DN 20 at Pages 28-30).

It is well established that post-AEDPA habeas corpus relief is not available based on the "cumulative" effect of errors that would not individually support habeas relief.  Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005).  Collier's reliance on the three cases cited in his reply brief (DN 20 at Pages 28-29) is misplaced because all three cases involve a direct appeal not petitions for post-AEDPA habeas corpus relief.

For the reasons set forth above, the undersigned concludes jurists of reason would not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For these reasons, the undersigned does not recommend issuance of a Certificate of Appealability for his cumulative error claim in Ground 12.

46

M

In Ground 13, Collier argues he is innocent as to the two murder convictions because Smith shot David and Pam LaMastus (DN 6).

Respondent argues federal habeas review is not available for this claim because Collier procedurally defaulted in the State courts and he has not made a showing of both "cause" and "prejudice" to excuse his procedural default (DN 14 at Pages 36-38).  Respondent concedes that the "cause" and "prejudice" test may be overlooked in an extraordinary case where a petitioner submits new and reliable evidence establishing that a Constitutional violation has probably resulted in the conviction of someone who is "actually innocent" (DN 14 at Pages 37-38).  Respondent acknowledges that in such circumstances the federal court may review the underlying merits of the claim in order to prevent a fundamental miscarriage of justice (DN 14 at Page 38).  Respondent contends that Collier does not satisfy the requirements for this exception and, therefore, federal habeas review is not available for this claim (DN 14 at Page 38).

In his reply, Collier argues he has steadfastly maintained his innocence as to shooting David and Pam LaMastus on October 24, 1986 (DN 20 at Pages 30-31).  Collier points out that he has never wavered from his claim that Smith shot David and Pam LaMastus to death (DN 20 at Page 30).  He then points out the evidence he believes corroborates his position (DN 20 at Page 30).  Collier argues the issue of his innocence has been fully exhausted in the State courts and therefore

47

is not procedurally defaulted (DN 20 at Page 31).[6] [7]

    "A state prisoner may obtain federal habeas corpus relief 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" Reed v. Farley, 512 U.S. 339, 347 (1994) (quoting 28 U.S.C. § 2254(a)).  Notably, in Ground 13 Collier is not seeking relief on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States (DN 1; DN 20 at Pages 30-31).  Nor is he claiming a Constitutional violation has resulted in the conviction of someone who is actually innocent.  Further, Collier insists that he is not claiming the evidence was insufficient to find him guilty of murder (DN 20 at Page 30).  Instead, he is asking the Court to address his claim that he is factually innocent as to the two murder convictions (DN 20 at Pages 30-31).  Clearly, federal habeas review does not encompass such a determination.

    For the reasons set forth above, the undersigned concludes jurists of reason would

---

[6]Alternatively, Collier argues if the Court finds his innocence claim is procedurally defaulted then cause to excuse the default arises from the failure of his trial counsel, direct appeal counsel and State post-conviction counsel to investigate and litigate this claim before the State courts (DN 20 at Page 31).  Collier reasons that the prejudice requirement is satisfied by his innocence (DN 20 at Page 31).

[7]Collier suggests that if the Court has any concerns about whether the innocence issue has been exhausted, he should be permitted to conduct discovery, pursuant to Rules 26 through 37 of the Federal Rules of Civil Procedure, so he can fully develop and identify the facts supporting his claim (DN 20 at Page 31).  Collier asks that he be permitted to amend his petition to include any additional claims or allegations identified or uncovered as a result of discovery and that any such amendment should relate back to the date of the original filing of the petition (DN 20 at Page 31).  Alternatively, Collier suggests that the Court could stay this proceeding and allow him to return to the State court to exhaust his claim of innocence (DN 20 at Page 31).

not find it debatable whether Collier has stated a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000).  For this reason, the undersigned does not recommend issuance of a Certificate of Appealability for the claim set forth in Ground 13.

## RECOMMENDATION

For the foregoing reasons, it is recommended that Collier's petition for writ of habeas corpus be DENIED, and that a Certificate of Appealability be DENIED as to each claim asserted in his petition.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be filed within ten (10) days or further appeal is waived.  Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, U.S. 140 (1984).

49

Copies:       Counsel